1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                            EASTERN DISTRICT OF CALIFORNIA

10

11   MELINDA AVILA; GRETEL                No.  1:15-cv-00996-JAM-GSA
     LORENZO; ALFREDO LORENZO; and
12   JOSE LORENZO,

13              Plaintiffs,             **ORDER GRANTING IN PART AND
                                        DENYING IN PART DEFENDANTS'
14        v.                            MOTIONS TO DISMISS**

15   STATE OF CALIFORNIA; COUNTY
     OF MADERA; RICHARD GONZALES;
16   PAUL VARNER; GUY RICH, and
     DOES 3 through 100,
17   inclusive,

18              Defendants.

19

20        Plaintiffs Melinda Avila ("Avila"), Gretel Lorenzo

21   ("Gretel"), Alfredo Lorenzo ("Lorenzo"), and Jose Lorenzo

22   ("Jose") (collectively "Plaintiffs") brought suit against

23   Defendants California Highway Patrol ("CHP") (nominally the State

24   of California), CHP Officer Paul Varner ("Varner"), County of

25   Madera ("the County"), and two officers with the Madera County

26   Sheriff's Department, Deputy Sheriff Richard Gonzales

27   ("Gonzales") and Sergeant Guy Rich ("Rich").  CHP and Varner

28   ("the CHP Defendants") filed a Motion to Dismiss ("the CHP

                                    1

1   Motion") (Doc. #6) the claims asserted against them in the Second

2   Amended Complaint ("SAC") (Exhibit #43, Doc. #1-7, to Notice of

3   Removal).  The County and Rich ("the County Defendants") filed a

4   separate Motion to Dismiss ("the County Motion") (Doc. #11),

5   attacking the timeliness of the claims against Rich and the

6   federal Monell claim against the County.

7

8        I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

9        The alleged conduct underlying Plaintiffs' claims occurred

10  on the night of June 1, 2013, and carried on into the next

11  morning.  SAC ¶¶ 19-23.  Plaintiffs allege an altercation

12  occurred within the Chukchansi Gold Resort and Casino ("the

13  Casino"), which led to Plaintiffs deciding to leave the Casino.

14  While Plaintiffs were waiting outside the Casino, Gonzales, Rich,

15  Varner and other law enforcement officers arrived and approached

16  them.  Plaintiffs were being questioned by the officers when, "in

17  a concerted action," Rich arrested Jose, and Gonzales and Varner

18  grabbed Alfredo, forced him to the ground, and handcuffed him.

19  When Gretel protested to the officers that Alfredo had done

20  nothing wrong, Gonzales "forcefully shoved" her backwards.  The

21  force caused Gretel to collide with Avila, which then caused

22  Avila to fall to the ground.  Avila struck her head on the ground

23  and shattered her hip.  Avila was then pinned down by one of the

24  officers.

25      Avila was subsequently transported to the hospital by

26  ambulance.  The remaining Plaintiffs were arrested, handcuffed,

27  and taken to the County Jail.  Charges against Gretel, Alfredo

28  and Jose were filed, but later dropped.

1    Plaintiffs filed their initial Complaint (Exhibit #1, Doc.

2    #1-1, to Notice of Removal, Doc. #1) in Madera Superior Court.

3    Plaintiffs later filed an Amended Complaint (Exhibit 12, Doc. #1-

4    2, to Notice of Removal).  It was not until after Plaintiffs

5    stated federal causes of action in the SAC that the County

6    Defendants removed the case to this Court.

7    The SAC states five causes of action: (1) violation of

8    California Civil Code § 52.1 ("the Bane Act") against all

9    Defendants; (2) False Arrest/Imprisonment against all Defendants;

10   (3) Reckless Infliction of Emotional Distress against all

11   Defendants; (4) Negligent Training and Supervision against CHP

12   and the County; (5) violation of Federal constitutional rights

13   pursuant to 42 U.S.C. § 1983 ("§1983") against the County

14   Defendants and Varner.

15

16              II.   OPINION

17   A.   Request for Judicial Notice

18   The County Defendants request the Court take judicial notice

19   (Doc. #12) of eight documents, Exhibits A-H (Doc. #12-1 through

20   12-8), in connection with the County Motion.  The documents

21   include Plaintiffs' claims for damages filed with the County in

22   accordance with the California Government Claims Act and the

23   corresponding rejection notices.  Because these materials are

24   matters of public record that are not subject to reasonable

25   dispute, the Court will take judicial notice of them.  See Fed.

26   R. Evid. 201; Clarke v. Upton, 703 F. Supp. 2d 1037, 1042 (E.D.

27   Cal. 2010) (finding filed California Government Tort Claims and

28   their rejections the proper subject of judicial notice).

B.   The CHP Motion to Dismiss

1.   Bane Act

The CHP Defendants contend there are no facts to support Plaintiffs' first cause of action against them for violation of the Bane Act.  CHP MTD at pp. 6-9.

The Bane Act creates an individual cause of action where "a person . . . whether or not acting under the color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion" with a right secured by federal or state law.  Cal. Civ. Code § 52.1(a). Section 52.1 was originally adopted in response to a rise in hate crimes, but it is not limited to such crimes, nor does it require plaintiffs to demonstrate discriminatory intent.  Venegas v. County of Los Angeles, 32 Cal.4th 820, 843 (2004) (holding that "plaintiffs need not allege that defendants acted with discriminatory animus or intent, so long as those acts were accompanied by the requisite threats, intimidation, or coercion").

The CHP Defendants challenge this cause of action on three grounds: (1) Plaintiffs have failed to allege the requisite independent coercion element; (2) the allegations do not support a claim by Plaintiffs Avila, Gretel or Jose against either CHP or Varner; and (3) the Bane Act does not apply to public entities, such as CHP.  CHP MTD at pp. 6-9.

a.   Coercion Element

Evident from the parties' briefs and the authorities cited therein, interpretations of the required element of "threat, intimidation, or coercion" have created confusion and received

4

considerable attention from state and federal courts faced with Bane Act claims.  Specifically in the context of claims involving wrongful detention, courts have found that "[t]he statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself."  <u>Shoyoye v. Cnty. of Los Angeles</u>, 203 Cal. App. 4th 947, 959, 137 Cal. Rptr. 3d 839, 849 (2012); <u>Gant v. Cnty. of Los Angeles</u>, 594 F. App'x 335, 337 (9th Cir. 2014) (affirming the district court's dismissal of a Bane Act claim based on a lack of "independent coercive acts"). There is disagreement about how exactly this principle is to be construed; some courts have recently found that when applying this principle at the pleadings stage "the relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct."  <u>M.H. v. Cnty. of Alameda</u>, No. 11-CV-02868 JST, 2013 WL 1701591, at *7 (N.D. Cal. 2013); <u>see also</u> <u>Bender v. Cnty. of Los Angeles</u>, 217 Cal. App. 4th 968, 980 (2013).

Applying these issues in another context, the Ninth Circuit has found that "a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1" but that the two claims are not "entirely duplicative" of each other and can be brought in tandem.  <u>Chaudhry v. City of Los Angeles</u>, 751 F.3d 1096, 1105-06 (9th Cir.) cert. denied sub nom. <u>City of Los Angeles, Cal. v. Chaudhry</u>, 135 S. Ct. 295 (2014); <u>see also</u> <u>Cameron v. Craig</u>, 713 F.3d 1012, 1022 (9th Cir. 2013) (finding "the elements of [an] excessive force claim under § 52.1 are the same as under § 1983").

///

Here, the CHP Defendants contend Plaintiffs impermissibly rely on the coercion inherent in the constitutional violations themselves, rather than an independent basis as required for a valid Bane Act claim.  CHP MTD at pp. 6-9.  In their Opposition, Plaintiffs argue they were unlawfully arrested and that excessive force was used in effecting the arrests, providing an adequate basis for a Bane Act claim.

Whether Plaintiffs' plausible allegations regarding the CHP Defendants' use of excessive force alone can suffice to state a Bane Act claim is irrelevant on the facts as alleged.  Plaintiffs allege they were unlawfully detained and that Defendants used excessive force in so detaining them.  These allegations are sufficient to support a Bane Act claim.  See Bender, 217 Cal.App.4th at 980-81; Orr v. California Highway Patrol, No. 2:14-585 WBS EFB, 2015 WL 4112363, at *10-11 (E.D. Cal. 2015); Bass v. City of Fremont, No. C12-4943 TEH, 2013 WL 891090, at *6 (N.D. Cal. 2013).

Defendants additionally argue "[c]laims of Fourth Amendment violations of wrongful arrest and excessive force in arrest are . . . insufficient to raise a Bane Act claim because remedies already exist in federal §1983 actions and California law concerning false arrest and assault and battery. . . ."  CHP MTD at pp. 7-8.  However, as discussed, Bane Act claims are not "entirely duplicative" of §1983 claims and the case law makes clear that Bane Act claims can be premised on conduct that also supports these other causes of action.  See Chaudhry, 751 F.3d at 1106.  The CHP Defendants' Motion to Dismiss the Bane Act claim on this ground is denied.

1                    b.    **Improper Plaintiffs**

2        Defendants contend that regardless of the propriety of the

3   Bane Act claim brought against them by Alfredo, the SAC fails to

4   plead any facts supporting the claims of Plaintiffs Avila, Gretel

5   and Jose.   MTD at p. 7.   Plaintiffs contend the County Officers

6   and Varner were working in concert and each is liable for the

7   constitutional injuries inflicted by the others.   Opp. at pp. 6-

8   7.

9        An officer cannot be held liable for constitutional

10  violations committed by another officer if he or she is a mere

11  bystander to the actionable conduct.   Burns v. City of Concord,

12  No. C 14-00535 LB, 2015 WL 1738208, at *7 (N.D. Cal. 2015).   "In

13  order for an officer to be liable for the violation of []

14  constitutional rights, that officer must have been either

15  personally involved in that violation or an integral participant

16  in the conduct giving rise to the violation."   Macias v. Cnty. of

17  Los Angeles, 144 Cal.App.4th 313, 323 (2006), as modified on

18  denial of reh'g (Nov. 17, 2006).   "[I]ntegral participation

19  requires some fundamental involvement in the conduct that

20  allegedly caused the violation."   Monteilh v. Cnty. of Los

21  Angeles, 820 F. Supp. 2d 1081, 1089-91 (C.D. Cal. 2011).

22       Despite the CHP Defendants' argument to the contrary in

23  their Reply (Doc. #17), the SAC alleges that the arrest of Jose,

24  the takedown and handcuffing of Alfredo and the force used on

25  Gretel and Avila, was part of a "concerted action" by the County

26  officers and Varner.   SAC ¶ 22.   Accepting the allegations as

27  true and drawing all reasonable inferences in favor of

28  Plaintiffs, none of the named, individual Defendants was simply a

1  bystander; rather, each played an integral role in carrying out

2  the conduct underlying the alleged constitutional violations.

3  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on

4  other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v.

5  Beto, 405 U.S. 319, 322 (1972).  The Court finds the allegations

6  in the SAC, and specifically paragraphs 22 and 25, sufficiently

7  state a Bane Act claim against the CHP Defendants on behalf of

8  all Plaintiffs.  See Tien Van Nguyen v. City of Union City, No.

9  C-13-01753-DMR, 2013 WL 3014136, at *8 n.3 (N.D. Cal. 2013).  The

10  CHP Defendants' Motion to Dismiss the Bane Act claim on this

11  ground is denied.

12                    c.  CHP Immunity

13      CHP contends that the Bane Act does not apply to them and

14  therefore dismissal is proper.  CHP MTD at p. 9.  It argues

15  public entities should not be considered "persons" as that term

16  is used in the Bane Act and therefore governmental liability

17  under the statute is precluded.  Plaintiffs contend the cases

18  relied on by CHP are inapposite.  CHP Opp. at pp. 9-11.  They

19  argue liability under the Bane Act can be established against

20  public agencies such as CHP.

21      Other courts in this district have found that public

22  entities fall within the purview of the Bane Act.  See Sanchez v.

23  City of Fresno, 914 F. Supp. 2d 1079, 1117 (E.D. Cal. 2012).

24  "[A] public entity can be liable for 'misconduct that interferes

25  with federal or state laws, if accompanied by threats,

26  intimidation, or coercion, and whether or not state action is

27  involved.'"  Dorger v. City of Napa, No. 12-CV-440 YGR, 2012 WL

28  3791447, at *7 (N.D. Cal. 2012) (quoting Venegas, 32 Cal.4th at

1   843).  Accordingly, the CHP Motion to Dismiss the Bane Act claim

2   on this ground is denied.

3           2.   Third and Fourth Causes of Action

4       The CHP Defendants contend Plaintiffs' causes of action for

5   reckless infliction of emotional distress and negligent failure

6   to train/supervise must fail.  CHP MTD at pp. 9-11.  First, they

7   argue there is no mandatory duty imposed on CHP that would

8   support holding CHP liable for these state law claims.  Second,

9   they argue CHP and Varner are entitled to discretionary immunity

10  based on California Government Code § 820.2 ("§820.2").

11      California Government Code § 815.2 ("§815.2") imposes

12  vicarious liability upon public entities, such as the state:

> A public entity is liable for injury proximately
> caused by an act or omission of an employee of the
> public entity within the scope of his employment if
> the act or omission would, apart from this section,
> have given rise to a cause of action against that
> employee or his personal representative.

17  See also Strong v. State, 201 Cal.App.4th 1439, 1448-49 (2011).

18  California courts have specifically found that CHP can be found

19  vicariously liable for the acts of its officers.  See Catsouras

20  v. Dep't of California Highway Patrol, 181 Cal.App.4th 856, 890

21  (2010), as modified on denial of reh'g (Mar. 1, 2010).

22      Section 820.2 states: "a public employee is not liable for

23  an injury resulting from his act or omission where the act or

24  omission was the result of the exercise of the discretion vested

25  in him, whether or not such discretion be abused."  "The

26  discretionary act immunity extends to basic governmental policy

27  decisions entrusted to broad official judgment."  Harmston v.

28  City & Cnty. of San Francisco, No. C 07-01186 SI, 2007 WL

1   2814596, at *3 (N.D. Cal. 2007) (citing <u>Caldwell v. Montoya</u>, 10

2   Cal.4th 972, 976 (1995)).

3                  a.   <u>Reckless Inflication of Emotional Distress</u>

4        Courts have found public entities and their employees can be

5   held liable for the infliction of emotional distress, especially

6   when premised on claims of false arrest and violations of a

7   plaintiff's constitutional rights.

8        As an initial matter, the Ninth Circuit has explicitly held

9   that "the immunity provided by California Government Code § 820.2

10  does not apply to claims of false imprisonment or false arrest

11  predicated on an officer's detaining a suspect without reasonable

12  suspicion or probable cause." <u>Liberal v. Estrada</u>, 632 F.3d 1064,

13  1084-85 (9th Cir. 2011).  Courts have used this basic principle

14  to find that claims derivate of false imprisonment or arrest are

15  similarly excluded from the discretionary immunity of §820.2.

16       In <u>Brown v. Cnty. of San Joaquin</u>, No. CIVS042008FCDPAN, 2006

17  WL 1652407, at *13 (E.D. Cal. 2006), an intentional infliction of

18  emotional distress claim was brought against the defendant county

19  and its officers.  Although the defendants claimed immunity, the

20  court found in favor of the plaintiff:

21         Plaintiff's claim for intentional infliction of
           emotional distress is derivative of his claims of
22         violations of his civil rights under federal law and
           false arrest under state law.  Because there are
23         triable issues of fact regarding these claims,
           specifically regarding the existence of probable cause
24         to arrest plaintiff, this claim survives as well.
           Further, because this claim is derivative of
25         plaintiff's claim for false arrest, discretionary
           immunity does not apply to insulate defendant
26         officers. <u>See</u> <u>Martinez [v. City of Los Angeles]</u>, 141
           F.3d [1373,] 1381-82 [(9th Cir. 1998)].  As such, the
27         County is also not immune from liability for this
           claim. <u>See</u> Cal. Gov't Code § 815.2(b).
28

                                    10

1   Id.

2        In Tacci v. City of Morgan Hill, No. C-11-04684 RMW, 2012 WL

3   195054, at *8-9 (N.D. Cal. 2012), the municipal defendants, the

4   City of Morgan Hill and the Morgan Hill Police Department, argued

5   that the plaintiff's claims for unlawful arrest and intentional

6   infliction of emotional distress were barred as to them because

7   the complaint did not identify a valid statutory basis for

8   imposing liability against a public entity.  Discussing the

9   application of §815.2, the Tacci court found the municipal

10  defendants could be held liable for the acts of their employees

11  under a respondeat superior theory of liability.  Id.  Addressing

12  the defendants' arguments regarding immunity, the court concluded

13  that "because plaintiff's cause of action for intentional

14  infliction of emotional distress is derivative of his claim for

15  false arrest, neither the defendant officers nor the municipal

16  defendants are immune from liability for this claim."  Tacci,

17  2012 WL 195054, at *8-9 (citing Brown, 2006 WL 1652407, at * 13

18  and Harmston, 2007 WL 2814596, at *8.

19       Plaintiffs' claim for reckless infliction of emotional

20  distress is derivative of their claims for false

21  arrest/imprisonment (second cause of action) and violation of

22  their constitutional rights (first and fifth causes of action).

23  Therefore, the Court finds that CHP could be found liable for

24  Varner's conduct and neither CHP or Varner is protected by the

25  discretionary immunity of §820.2.  See also Rojas v. Sonoma

26  Cnty., No. C-11-1358 EMC, 2011 WL 5024551, at *6 (N.D. Cal. 2011)

27  (denying a motion to dismiss state law claims against a public

28  entity, including negligent and intentional infliction of

11

1    emotional distress, based on §815.2).   The CHP Defendants' Motion

2    to Dismiss these claims is denied.

3                    b.   Negligent Training and Supervision

4        CHP contends there is no basis for imposing liability

5    against it for negligent training and supervision; therefore, the

6    fourth cause of action should be dismissed.   CHP MTD at pp. 9-

7    11.   CHP argues that it cannot be held vicariously liable

8    pursuant to §815.2 because the employee accused of the culpable

9    conduct, Commissioner Joseph A. Farrow ("Farrow"), is not a named

10   defendant and that it cannot be held directly liable because

11   Plaintiffs have failed to cite a statute which imposes a

12   mandatory duty on them regarding training or supervision.   Id. at

13   p. 11.

14       It appears that Plaintiffs first contend that CHP can be

15   held directly liable for their failure to supervise and train

16   their officers.   CHP Opp. at p. 12.   However, courts have

17   consistently found no support for holding public entities

18   directly liable for such state law claims.   See Shoval v. Sobzak,

19   No. 09-CV-01348-H, 2009 WL 2780155, at *4 (S.D. Cal. 2009)

20   ("California courts have repeatedly held that there is no

21   statutory basis for direct claims against a public entity for

22   negligent hiring and supervision practices."); de Villers v.

23   Cnty. of San Diego, 156 Cal. App. 4th 238, 252-53 (2007) (finding

24   "no relevant case law approving a claim for direct liability

25   based on a public entity's allegedly negligent hiring and

26   supervision practices").

27       However, as discussed above, public entities can be held

28   vicariously liable for the conduct of their employees when

1    committed within the scope of their employment, if the employees

2    are not immune from liability themselves.  See §815.2.   While

3    the Opposition does not appear to directly argue vicarious

4    liability on this claim, the SAC specifically states that the

5    fourth cause of action seeks to impose liability against CHP

6    based on the conduct of Farrow pursuant to §815.2.  SAC ¶¶ 55-56.

7    CHP contends that Farrow must be named in order to assert

8    vicarious liability against it.  CHP MTD at p. 11.

9        One California Court of Appeal has discussed the proper

10   analysis of such claims:

11           [T]he liability of the employer only attaches if and
             when it is adjudged that the employee was negligent as
12           well.  If the agent or employee is exonerated, the
             principal or employer cannot be held vicariously
13           liable.  7 Witkin, Cal. Procedure [4th Ed. 1997] Trial,
             § 368, pp. 418-419.  Furthermore, unless the employee
14           is identified, the trier of fact will not be able to
             determine if the elements needed to assert vicarious
15           liability have been proved.  CACI No. 3701 (2004 ed.)
             and Directions for Use.  Thus, the doctrine clearly
16           contemplates that the negligent employee whose conduct
             is sought to be attributed to the employer at least be
17           specifically identified, if not joined as a defendant.

18   Munoz v. City of Union City, 120 Cal.App.4th 1077, 1113 (2004),

19   opinion modified on denial of reh'g (Aug. 17, 2004) disapproved

20   on other grounds by Hayes v. Cnty. of San Diego, 57 Cal. 4th 622

21   (2013).  Accordingly, in order to state a proper claim for

22   negligent hiring or supervision against the CHP, Plaintiffs must

23   identify, if not join, the specific employee whose negligence is

24   alleged and the specific negligent conduct underlying the claim.

25       The SAC adequately identifies Farrow as the employee whose

26   conduct was allegedly negligent.  Therefore, imposition of

27   liability on CHP based on §815.2 is proper if the negligent

28   conduct is adequately alleged.  However, the Court finds that the

                                    13

factual allegations in the SAC fail to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. denied, 132 S. Ct. 2101, 182 L. Ed. 2d 882 (U.S. 2012).  Simply alleging that Farrow "failed to properly and adequately train and supervise the law enforcement personnel employed by [him]" is insufficient, alone, to state a claim against CHP.  SAC ¶ 54; see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Assertions that are mere 'legal conclusions' are [] not entitled to the presumption of truth.").  The CHP Defendants' Motion to Dismiss the fourth cause of action against CHP is granted.  However, because it is not clear to the Court that the claim "could not be saved by amendment," leave to amend is granted pursuant to Federal Rule of Civil Procedure 15(a).  Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

C.   The County Motion to Dismiss

The County Motion contends (1) the claims against Rich are untimely and (2) the fifth cause of action fails to state a viable claim against the County.

1.   Defendant Rich

Plaintiffs allege four claims against Rich.  Three of the claims are under state law and the remaining claim is under federal law.  Rich contends each of these claims is untimely.

a.   State Law Claims

Rich contends the state-law claims are subject to a six-month statute of limitations period.  County MTD at pp. 4-6.

14

1   Because Plaintiffs' claims against him were filed after the six-
2   month deadline, Rich argues the Court should dismiss them.

3       Under California law, before suing a public entity or its
4   employees for money or damages, a plaintiff must present a
5   timely, written claim for damages to the entity.  Shirk v. Vista
6   Unified Sch. Dist., 42 Cal. 4th 201, 208 (2007) ("Shirk"), as
7   modified (Oct. 10, 2007) (citing Cal. Gov. Code § 911.2; State of
8   California v. Superior Court, 32 Cal. 4th 1234, 1239 (2004));
9   Jaimes v. Herrera, No. 1:13-CV-01884 DLB PC, 2015 WL 4392951, at
10  *3 (E.D. Cal. 2015) (citing Cal. Gov. Code §§ 905.2, 910, 911.2,
11  945.4, 950-950.2).  The claim for damages must be presented to
12  the public entity no later than six months after the cause of
13  action accrues.  Shirk, at 208; Cal. Gov. Code § 911.2.  Only
14  after the public entity has acted upon or is deemed to have
15  rejected the claim may the injured person bring a lawsuit
16  alleging a cause of action in tort against the public entity or
17  its employees.  Shirk, at 209 (citing Cal. Gov. Code §§ 912.4,
18  945.4; Williams v. Horvath, 16 Cal.3d 834, 838 (1976)); Cal. Gov.
19  Code § 950.6.

20      It is undisputed that Plaintiffs timely filed their "Claims
21  for Damages" with the County.  SAC ¶ 18; RJN Exh. A-H.  The issue
22  is whether once those claims were denied did Plaintiffs timely
23  file their claims against Rich.

24      Once a public entity deposits its rejection of a claim in
25  the mail, a suit against the entity or its employees based on
26  that claim must be commenced not later than six months
27  thereafter.  Cal. Gov. Code §§ 945.6; 950.6.

28

> The deadline for filing a lawsuit against a public entity, as set out in the government claims statute, is a true statute of limitations defining the time in which, after a claim presented to the government has been rejected or deemed rejected, the plaintiff must file a complaint alleging a cause of action based on the facts set out in the denied claim.

Shirk, 42 Cal. 4th at 209.  "The six-month period . . . is mandatory and strict compliance is required."  Arres v. City of Fresno, No. CV F 10-1628 LJO SMS, 2011 WL 284971, at *20 (E.D. Cal. 2011) (citing Clarke v. Upton, 703 F. Supp. 2d 1037, 1044 (E.D. Cal. 2010)).

The claim filed by Avila was rejected by the County on October 10, 2013.  RJN Exh. E.  The claims filed by Jose, Alfredo and Gretel were rejected on November 27, 2013.  RJN Exh. F-H. Although the original complaint was filed on March 20, 2014, within the six-month limitations period, Rich was not named as a Defendant.  Notice of Removal, Exh. 1 (Doc. #1-1).  In fact, Rich was not a named defendant until the SAC was filed on June 15, 2015.  The County Defendants contend the claims against Rich are therefore untimely.  County MTD at pp. 4-6.  Plaintiffs respond that the claims against Rich should not be dismissed because the late filing was, "obviously, the result of an oversight," and the doctrine of equitable tolling applies.  Opp. to County at p. 5.

"Equitable tolling is a judge-made doctrine 'which operates independently of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." Lantzy v. Centex Homes, 31 Cal. 4th 363, 370 (2003), as modified (Aug. 27, 2003) (quoting Addison v. State of California, 21 Cal. 3d 313, 318-19 (1978)).  "[T]he effect of equitable tolling is

that the limitations period *stops running* during the tolling event, and begins to run again only when the tolling event has concluded." Id. at 370-71 (emphasis in original). "[A]pplication of the doctrine of equitable tolling requires timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." Addison, 21 Cal. 3d at 319.

Many courts have applied equitable tolling to avoid the harsh effects of a relevant statute of limitations, including the one at issue here. However, in these cases, the tolling event generally involved the plaintiff's pursuit of alternate remedies, such as required or voluntary pursuit of administrative remedies or pursuit of a claim in a federal rather than state forum. See McDonald v. Antelope Valley Cmty. Coll. Dist., 45 Cal. 4th 88, 101-05 (2008) (discussing various applications of the doctrine in this context). The California Supreme Court has stated that "[b]roadly speaking, the doctrine applies [w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one." Id. at 100 (internal quotations and citations omitted).

Here, Plaintiffs were not pursuing alternate remedies against Rich in some other forum and do not indicate exactly what they consider the specific tolling *event* to be. Plaintiffs also have not cited a single case in which equitable tolling was applied in a context not involving the plaintiff's pursuit of the claim in another context during the limitations period. Nor have Plaintiffs provided any authority for applying equitable tolling where failure to meet the relevant statutory timeline was

1   "obviously, the result of an oversight."  See Hughey v. Drummond,

2   No. 2:14-CV-00037-TLN, 2015 WL 4395013, at *5 (E.D. Cal. 2015)

3   (finding no case law to support a similar request for applying

4   equitable tolling to exempt a plaintiff from a "straightforward

5   application" of the California Government Claims Act's statute of

6   limitations).  Rather, they offer conclusory contentions that the

7   elements of the doctrine are met.  Opp. to County at pp.4-5.

8   Because the statute of limitations has expired, the County

9   Defendants' Motion to Dismiss the state law claims against Rich

10  is granted with prejudice.

11              b.   Federal Claim

12       The parties agree that the California Government Claims

13  Act's statute of limitations does not apply to Plaintiffs' §1983

14  claims; rather, California's two-year statute of limitations for

15  personal injury actions is the proper limitations period.

16  Canatella v. Van De Kamp, 486 F.3d 1128, 1132-33 (9th Cir. 2007).

17       The County Defendants contend Plaintiffs' fifth cause of

18  action brought pursuant to §1983 is untimely because Rich was not

19  named as a defendant until over two years after the incident.

20  County MTD at pp. 8-9.  They argue the claims should therefore be

21  dismissed.  Plaintiffs base their opposition on two grounds: (1)

22  equitable tolling should be applied to avoid dismissal; and (2)

23  the claims are not untimely because Rich was made a party to the

24  action by Doe Amendment before the running of the two-year

25  limitations period.  Opp. to County at pp. 5-7.

26              i.   Equitable Tolling

27       In their Opposition, Plaintiffs have repeated, verbatim,

28  their previous arguments regarding equitable tolling, only now in

                              18

1   regard to their federal claim.  Opp. to County at p. 7.

2        For §1983 claims, federal courts apply the forum state's law

3   regarding equitable tolling.  Canatella, 486 F.3d at 1132; Jones

4   v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004).  As discussed

5   above, Plaintiffs are not entitled to equitable tolling under

6   California law.  The Court turns to Plaintiffs' other theory.

7                    ii.   Doe Amendment

8        Plaintiffs contend Rich was made a party to this action

9   based on a "Doe Amendment" filed with the state court, naming

10  Rich as "Doe 26" in May 2015.  Opp. to County at pp. 6-7; Exh. 34

11  (Doc. #1-5) to Notice of Removal.  They argue this amendment

12  relates back to the filing of the Amended Complaint (Exh. 12 to

13  Notice of Removal, Doc. #1-2) in May 2014, within the limitations

14  period.  The County Defendants argue the attempted amendment was

15  never ratified by the state court as required and was improper

16  because Plaintiffs were not ignorant of Rich's identity when

17  filing the Amended Complaint as evidenced by their Claims for

18  Damages.

19       "The general rule is that an amended complaint that adds a

20  new defendant does not relate back to the date of filing the

21  original complaint and the statute of limitations is applied as

22  of the date the amended complaint is filed, not the date the

23  original complaint is filed."  Woo v. Superior Court, 75

24  Cal.App.4th 169, 176 (1999).  An exception to this general rule

25  is the use of Doe Defendants under California Code of Civil

26  Procedure § 474 ("§474").  Id.  Section 474 provides that "[w]hen

27  the plaintiff is ignorant of the name of a defendant, he must

28  state that fact in the complaint . . . and such defendant may be

1   designated in any pleading or proceeding by any name, and when

2   his true name is discovered, the pleading or proceeding must be

3   amended accordingly . . . ."

4       "Upon ascertaining the true name of the Doe defendant, the

5   plaintiff may amend the complaint even after the expiration of

6   the statute of limitations." McGee St. Prods. v. Workers' Comp.

7   Appeals Bd., 108 Cal.App.4th 717, 725 (2003) (citing §474; Woo,

8   75 Cal.App.4th at 175-78).  However, a requirement for the

9   relation-back operation of §474 is that the plaintiff is

10  "genuinely ignorant" of the Doe Defendant's identity at the time

11  of the earlier filing.  Woo, at 177.  "The requirement of good

12  faith ignorance of the true name of a fictitiously designated

13  defendant set forth in Code of Civil Procedure section 474 is

14  designed to promote the policies supporting the statute of

15  limitations." McGee Street Productions, at 725.  "[I]f the

16  identity ignorance requirement of section 474 is not met, a new

17  defendant may not be added after the statute of limitations has

18  expired even if the new defendant cannot establish prejudice

19  resulting from the delay." Woo, at 177 (citing Hazel v. Hewlett,

20  201 Cal.App.3d 1458, 1466 (Ct. App. 1988)).

21      Plaintiffs contend §474 allows for the delay of naming a Doe

22  Defendant until a plaintiff has "'knowledge of sufficient facts

23  to cause a reasonable person to believe liability is probable.'"

24  Opp. to County at p. 6 (quoting Dieckmann v. Superior Court, 175

25  Cal.App.3d 345, 363 (1985)).  Therefore, they argue the claims

26  for damages filed with the County, in which Rich is specifically

27  named, do not preclude their reliance on §474.  Id.  However, the

28  claims for damages filed by Plaintiffs make it abundantly clear

1  that Rich's identity and culpable involvement in the underlying

2  incident was well known to Plaintiffs well before they sought to

3  add Rich to this litigation by way of a Doe Amendment.   RJN Exh.

4  A-H.

5      Because Plaintiffs were not genuinely ignorant of Rich's

6  role in the alleged conduct underlying their claims, reliance on

7  the relation-back doctrine of §474 to avoid a statute of

8  limitations defense is improper.   In addition, Plaintiffs point

9  to no evidence that the state court approved their motion to add

10  Rich as Doe 26 before the SAC was filed.

11      The Court does not find Plaintiffs' additional arguments

12  regarding the proper method for filing a Doe Amendment and the

13  proper remedy for striking an improper Doe Amendment persuasive.

14      Plaintiffs' federal claim against Rich in the fifth cause of

15  action is untimely; the County Defendants' Motion to Dismiss it

16  is therefore granted with prejudice.

17          2.  <u>Monell Liability</u>

18     The County contends Plaintiffs' fifth cause of action

19  pursuant to §1983 should be dismissed because it does not

20  properly allege a basis for municipal liability.   County MTD at

21  pp. 9-10.   It argues Plaintiffs attempt to hold it liable under a

22  respondeat superior theory of liability, which is impermissible

23  for a §1983 claim.

24     Plaintiffs respond that their §1983 claim against the County

25  is based on a failure to train theory.   County Opp. at pp. 8-9.

26  They argue the allegations in the fourth cause of action, which

27  are incorporated into the fifth cause of action, provide an

28  adequate basis for such a claim.

To properly state a Monell claim, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)). "A Monell claim may be stated under three theories of municipal liability: (1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct." Sants v. Seipert, No. 2:15-CV-00355-KJM, 2015 WL 5173075, at *4 (E.D. Cal. 2015) (citing Clouthier v. Cnty. of Contra Costa, 591 F.3d 1232, 1249-50 (9th Cir. 2010)).

An "inadequate training" claim can be the basis for §1983 liability under the second theory, but only under "limited circumstances." City of Canton, Ohio v. Harris, 489 U.S. 378, 387 (1989); see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 407 (1997). In this context, the failure to train must amount to "deliberate indifference to the rights of persons with whom the police come into contact." Harris, at 388-89. This standard is not met by a "showing of simple or even heightened negligence." Brown, at 407.

Here, Plaintiffs have alleged that the County, through Sheriff John P. Anderson, has "negligently and carelessly failed to train and supervise the law enforcement personnel employed by

1  [it]."  SAC ¶ 55.  Plaintiffs' allegations clearly do not meet

2  the heightened standard of "deliberate indifference" and

3  therefore the claim against the County in the fifth cause of

4  action is dismissed with leave to amend.  See Eminence Capital,

5  316 F.3d at 1052.

6

7                          III.   ORDER

8       For the reasons set forth above, the Court GRANTS the CHP

9  Defendants' Motion to Dismiss the fourth cause of action as

10 against CHP for negligent training and supervision WITH LEAVE TO

11 AMEND.  The CHP Motion is otherwise DENIED.

12      The Court GRANTS the County Defendants' Motion to Dismiss

13 all claims against Rich WITH PREJUDICE.  The County Motion is

14 GRANTED as to Plaintiffs' fifth cause of action against the

15 County WITH LEAVE TO AMEND.

16      Plaintiffs shall file their Third Amended Complaint within

17 twenty days of the date of this Order. The remaining Defendants

18 shall file their responsive pleadings within twenty days

19 thereafter.

20      IT IS SO ORDERED.

21 Dated:  October 14, 2015

22

23                                    _____
                                      JOHN A. MENDEZ,
                                      UNITED STATES DISTRICT JUDGE

24

25

26

27

28