UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELINDA AVILA; GRETEL LORENZO; ALFREDO LORENZO; and JOSE LORENZO,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF CALIFORNIA; COUNTY OF MADERA; RICHARD GONZALES; PAUL VARNER, and DOES 3 through 100, inclusive,<br><br>Defendants. | No. 1:15-cv-00996-JAM-EPG<br><br>**ORDER GRANTING DEFENDANTS VARNER AND CALIFORNIA HIGHWAY PATROL'S MOTION FOR SUMMARY JUDGMENT AS TO GRETEL LORENZO** |

This Court held a hearing on the summary judgment motion brought by California Highway Patrol ("CHP") and Officer Varner ("Varner") (collectively, "CHP Defendants") on June 20, 2017. ECF No. 78. At the conclusion of the hearing, the Court asked the parties to further brief whether the Court should grant summary judgment for CHP Defendants on Gretel Lorenzo's ("Gretel") first and fifth claims. Tr. 45:18-22, Jun. 20, 2017 ("Tr."), ECF No. 82. CHP Defendants filed their supplemental

1

brief, Supplemental Mot. for Summ. J. ("Supp. Mot."), ECF No. 83, and Gretel opposed, Opposition to Supp. Mot. ("Opp'n"), ECF No. 88. For the reasons set forth below, the Court GRANTS CHP Defendants' motion.

I. FACTS AND PROCEDURAL BACKGROUND

At about 2:00 a.m. on June 2, 2013, security at Chukchansi Gold Casino called the Madera County Sheriff's Department regarding a disturbance. Pls.' Resp. to Defs.' Statement of Undisputed Facts ("UF") #22, ECF No. 63-7. Varner responded to the scene with another CHP officer and Madera County officers Gonzales and Rich. UF ##23, 24.

Gretel and the other plaintiffs were waiting outside the casino when the officers approached them. UF #28. The officers began speaking to Jose, Gretel's father. UF #28. After a few minutes of conversation, Rich arrested Jose. UF #39. Varner and Gonzales arrested Jose's brother Alfredo and took him to the ground. UF #42. While Gonzales and Varner were trying to handcuff Alfredo, Gretel approached them. UF #43.

A video of the incident, reviewed by this Court multiple times, indisputably shows Gretel reaching out and touching Varner. The Court stated at the hearing: "I can actually stop the video, and you can see Gretel's hand on Varner's shoulder." Tr. 21:12-13. The Court therefore found Gretel clearly "put[] her hand on a police officer who [wa]s trying to arrest another person." Tr. 21:23-24. Then, Gonzales pushed Gretel away and she fell. UF #45. Varner also reached up and possibly touched Gretel. Because it was unclear if Varner contributed to Gretel's fall, the Court found a triable issue of fact as to whether

2

Varner actually touched Gretel.  Tr. 22:7-13.

Gretel brought five claims against CHP Defendants: (1) violation of California Civil Code § 52.1 ("the Bane Act"); (2) false arrest/imprisonment; (3) intentional infliction of emotional distress ("IIED"); (4) negligent training and supervision; and (5) excessive force under 42 U.S.C. § 1983. Third Amended Complaint at 6-18, ECF No. 22.

Gretel voluntarily dismissed the fourth claim entirely and the fifth claim as brought against CHP.  ECF No. 65.  At hearing, the Court granted CHP Defendants' motion on Gretel's second claim for false arrest.  Tr. 30:14-22.  The Court reserved judgment on Gretel's third claim pending the supplemental briefing on the first and fifth claims.  Tr. 46:22-47:4.

## II. OPINION

### A. Legal Standard

The Bane Act "creates a right of action against any person who interferes by threat, intimidation, or coercion with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States." Barragan v. City of Eureka, No. 15-CV-02070-WHO, 2016 WL 4549130, *7 (N.D. Cal. Sept. 1, 2016) (quoting Cal. Civ. Code § 52.1(a)) (internal quotation marks omitted).  An excessive force claim brought under § 1983 can give rise to a Bane Act claim.  May v. San Mateo Cty., No. 16-CV-00252-LB, 2017 WL 1374518, at *13 (N.D. Cal. Apr. 15, 2017).  The elements of an excessive force claim under the Bane Act are the same as under § 1983.  Cameron v. Craig, 713 F.3d 1012, 1022 (9th Cir. 2013). Thus, Gretel's Bane Act claim depends on whether she can prove

her Fourth Amendment excessive force claim.

A law enforcement officer violates the Fourth Amendment right against excessive force when he "carrie[s] out an unreasonable seizure through a use of force that was not justified under the relevant circumstances." Cty. of Los Angeles, Calif. v. Mendez, 137 S. Ct. 1539, 1547 (2017). But police officers may use force that is "'objectively reasonable' in light of the facts and circumstances confronting them." Graham v. Connor, 490 U.S. 386, 397 (1989). The Supreme Court has explained:

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

Id. at 396–97 (internal citations and quotation marks omitted). A court must assess reasonableness by balancing "the force which was applied . . . against the need for that force." Liston v. Cty. of Riverside, 120 F.3d 965, 976 (9th Cir. 1997).

B. <u>Analysis</u>

CHP Defendants argue Gretel cannot prove her excessive force claim against Varner because any force Varner used against her was objectively reasonable. Supp. Mot. at 2. Gretel argues the Court should let the jury decide whether Varner's use of force was reasonable. Opp'n at 5.

///

///

4

### 1. The Force Applied

Gretel argues she "was subjected to a violent shove that . . . could have resulted in serious bodily injury." Opp'n at 6. Varner argues he merely "brushed away Gretel's arm." Reply at 2.

The Ninth Circuit has found that a "single push" by an officer when a plaintiff "lean[s] over [the officer] during the arrest" of another person is a "minimal intrusion." Jimenez v. City of Costa Mesa, 174 F. App'x 399, 402 (9th Cir. 2006). Gretel does not cite to any case where a court considered a similar push significant or deadly force. The Court finds that the amount of force, if any, Varner used against Gretel was minimal.

### 2. The Need for Force

Courts assessing the need for force should consider (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. The most important factor is whether the suspect poses an immediate threat to the safety of the officers or others. Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010).

CHP Defendants address only the safety factor. The Court therefore assumes for purposes of this motion that CHP Defendants concede that Gretel's alleged crimes were not severe and that she was not fleeing or resisting her own arrest.

As to the safety factor, CHP Defendants argue, "[w]hen Gretel Lorenzo grabbed at Officer Varner's back, he was in a

compromised safety position" because his "hands were occupied attempting to control Alfredo Lorenzo[,]" and Gretel "was in a position to grab a weapon from Officer Varner." Id. at 3. CHP Defendants add, "Gretel also posed a risk to the safety of Alfredo Lorenzo by grabbing at the officer who was attempting to safely take Alfredo to the ground." Id.

Gretel disputes CHP Defendants' contentions. First, Gretel argues that one officer wrote in his report that both Gonzales and Varner pushed Gretel. Opp'n at 1 (citing Ex. 14 at 3, ECF No. 68-6). Gretel also states the video taken by bystanders shows Varner pushed Gretel. Opp'n at 1 (citing Exh. 9, Videos 4 and 5 @ 41 sec.). But this argument is irrelevant. The Court must decide whether any force Varner used was reasonable, not whether Varner actually used any force.

Second, Gretel argues the Court should leave the reasonableness assessment to the jury. Opp'n at 4. She relies heavily on Garlick v. Cty. of Kern, 167 F. Supp. 3d 1117 (E.D. Cal. 2016). While citing to much of the language in the Garlick opinion in her supplemental opposition brief, Gretel omits a crucial part of the Court's rationale: the reasonableness issue should be determined by a jury "especially where cases involve an in-custody death, because the witness most likely to contradict [an officer's] story is not available to testify." Id. at 1145. No such death occurred here, and the plaintiffs have testified under oath as to what happened. In fact, Gretel gave detailed testimony about this incident in her deposition, and she never once indicated Varner pushed her; throughout her deposition she mentions only one officer pushing her. See

6

Gretel Depo. at 74-77. Gretel has also never testified that it was Varner's use of force that caused her to fall backwards. Simply put, the same concerns present in Garlick do not exist here.[1] The Court therefore finds that under these circumstances, it can decide as a matter of law whether Varner acted reasonably.

Finally, Gretel argues that CHP Defendants' contention that Gretel was endangering Varner and Alfredo is merely speculative. Opp'n at 6. Gretel quotes from Deorle v. Rutherford, which states that a "simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." 272 F.3d 1272, 1281 (9th Cir. 2001). Yet, CHP Defendants' safety argument does not depend solely on a "simple statement" by Varner that he feared for his safety. The video objectively shows Gretel touching Varner while he was trying to arrest Alfredo. In sum, the Court finds that CHP Defendants' safety argument does not depend solely on Varner's testimony, and so Deorle does not require this Court to deny summary judgment on this basis.

In considering all the evidence before the Court in the light most favorable to Gretel, the Court finds that Gretel has failed to raise a genuine dispute as to any material fact on the issue of whether Officer Varner was in a compromised safety position when Gretel put her hands on him. In response to Gretel's action, Varner raised up and brushed away Gretel's arm.

---

[1] As CHP Defendants also argue, the facts of Garlick are easily distinguishable from the case at bar and the case is not of much help to this Court in deciding the issue before it.

7

This action was reasonable. He was acting in response to a possible threat that Gretel posed to the safety of himself and possibly others (such as Alfredo Lorenzo). The video evidence clearly establishes that Varner's action was objectively reasonable.

### 3. Balancing the Force Applied Against the Need for Force

The Court, having found that Varner's use of force against Gretel was minimal and Varner properly used force for his own safety, must now balance this important safety interest against the minimal force Varner used (even assuming Gretel was not resisting arrest or accused of a serious crime). In doing so, the Court finds Varner's use of force reasonable and not excessive. No reasonable jury could find Varner violated Gretel's constitutional rights by pushing away her arm when Gretel touched Varner during an arrest.

Because Gretel's excessive force claim fails, her Bane Act claim also fails. Additionally, based on its findings regarding Varner's use of force, the Court finds Varner's actions towards Gretel do not rise to the level of "extreme and outrageous conduct" required for an IIED claim.[2]

## III. ORDER

For the reasons set forth above, the Court GRANTS summary judgment in favor of CHP Defendants on Gretel's first, third, and

---

[2] The Court indicated at hearing that Gretel's IIED claim was "dependent on the Court's findings on the first and fifth claims." Tr. 46:23-25. The Court stated: "If I grant summary judgment on the first and fifth claims, then the third claim would go away as well." Tr. 47:2-4. Neither party addressed the IIED claim in their supplemental briefs.

fifth claims.

IT IS SO ORDERED.

Dated: August 23, 2017

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE