# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **MELINDA AVILA, GRETEL LORENZO, ALFREDO LORENZO, and JOSE LORENZO,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**STATE OF CALIFORNIA; COUNTY OF MADERA; RICHARD GONZALES; PAUL VARNER; and DOES 3 through 100, inclusive,**<br><br>**Defendants.** | **1:15-cv-00996-LJO-EPG**<br><br>**MEMORANDUM DECISION AND ORDER RE MOTIONS *IN LIMINE*; ORDER VACATING 2/26/18 HEARING**<br><br>**(ECF Nos. 110-119, 121-124, and 126-144)** |

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Melinda Avila ("Avila"), Gretel Lorenzo ("Gretel"), Alfredo Lorenzo ("Alfredo"), and Jose Lorenzo ("Jose") (collectively, "Plaintiffs") bring this suit against Defendants California Highway Patrol ("CHP") (nominally the State of California), CHP Officer Paul Varner ("Varner"), County of Madera ("the County"), and Madera County Deputy Sheriff Richard Gonzales ("Gonzales").

This suit arises out of an incident at the Chukchansi Gold Resort & Casino ("Casino") early in the morning on June 2, 2013. Following an altercation inside the Casino, Casino security called the Madera County Sheriff's Department. Defendant Gonzales responded with another County officer, along with Defendant Varner and another CHP officer as backup. Plaintiffs were waiting outside in the Casino portico when the officers approached them. Following a brief conversation with Plaintiffs, Gonzales and Varner arrested Alfredo while another officer arrested Alfredo's brother Jose. Gonzales and Varner took Alfredo to the ground and while attempting to handcuff him, Gretel, Jose's daughter,

approached the officers and apparently touched Varner's shoulder. Gonzales pushed Gretel away, and she fell backwards into Avila, knocking her down. Avila was transported via ambulance to the hospital. Jose, Gretel, and Alfredo were arrested, booked at the County jail for public intoxication and resisting arrest, and released later that morning. Following summary judgment, Plaintiffs' remaining claims include causes of action based on the Bane Act, false arrest, intentional infliction of emotional distress, and 42 U.S.C. § 1983.

The matter is set for a jury trial on May 10, 2018. Currently before the Court are 17 motions *in limine* from Plaintiffs, ECF Nos. 128-144; 10 from Defendants CHP and Varner, ECF Nos. 110-119; and six from Defendants County and Gonzales, ECF Nos. 121-127. The Court finds the matters suitable for decision on the papers and considers them under submission pursuant to Local Rule 230(g).

## II. **STANDARD OF DECISION**

A party may use a motion *in limine* to exclude inadmissible or prejudicial evidence before it is actually introduced at trial. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). "[A] motion *in limine* is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child and Family Services*, 115 F.3d 436,440 (7th Cir. 1997). A motion *in limine* allows the parties to resolve evidentiary disputes before trial and avoids potentially prejudicial evidence being presented in front of the jury, thereby relieving the trial judge from the formidable task of neutralizing the taint of prejudicial evidence. *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003).

Motions *in limine* that exclude broad categories of evidence are disfavored and such issues are better dealt with during trial as the admissibility of evidence arises. *See, e.g., Brown v. Kavanaugh*, No. 1:08-cv-01764-LJO, 2013 WL 1124301, at *2 (E.D. Cal. Mar.18, 2013) (citing *Sperberg v. Goodyear Tire & Rubber, Co*., 519 F.2d 708, 712 (6th Cir. 1975)); *see also In re Homestore.com, Inc*., No. CV 01–11115 RSWL CWX, 2011 WL 291176, at *2 (C.D. Cal. Jan.25, 2011) (holding that motions *in limine* should "rarely seek to exclude broad categories of evidence, as the court is almost always better situated

to rule on evidentiary issues in their factual context during trial"); *cf. Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2012 WL 1189898, at *4 (N.D. Cal. Jan. 4, 2012) (concluding that "a broad categorical exclusion" was unwarranted).

Additionally, some evidentiary issues are not accurately and efficiently evaluated by the trial judge in a motion *in limine*, and it is necessary to defer ruling until during trial when the trial judge can better estimate the impact of the evidence on the jury. *See, e.g., United States v. Amaro*, 613 Fed. Appx. 600, 602 (9th Cir. 2015), *cert. denied sub nom. Stewart-Hanson v. United States*, 136 S. Ct. 276 (2015); *see also Jonasson*, 115 F.3d at 440.

## III. DISCUSSION

### A.    Plaintiffs' Motions *In Limine*

Plaintiffs bring 17 motions *in limine* ("MIL"), which the Court addresses in turn.

#### 1.    MIL To Exclude Evidence And Questioning Regarding Any Prior Arrests, Criminal Charges And/Or Convictions Of Plaintiffs Unrelated To The Incident (MIL #1, ECF No. 128)

Plaintiffs moves to exclude any evidence concerning prior arrests, criminal charges, and convictions unrelated to the subject incident on the basis that any evidence would not meet the requirements for attacking a witness's character for truthfulness by evidence of a criminal conviction under Federal Rule of Evidence 609 and would be unfairly prejudicial. ECF No. 128. Defendants respond that they seek to introduce evidence of Plaintiff Jose Lorenzo's prior DUI conviction "to demonstrate how Mr. Lorenzo's body reacts to alcohol consumption." ECF No. 180 at 2. Jose was drinking on the night of the incident at issue in this suit, and whether he was intoxicated is a disputed fact. Defendants seek to introduce testimony from Jose that he had a conviction for driving under the influence of alcohol after having consumed only two beers, which they argue is relevant evidence of whether he was intoxicated at the time of the casino incident, when he ordered at least five beers at the casino bar but maintains that he was not intoxicated and that his blood alcohol level was not tested. *Id.* They also argue that evidence of the prior DUI conviction is relevant to the degree of humiliation he

experienced during the arrest on the night of the casino incident. Because the evidence of the prior DUI is relevant to whether Jose was intoxicated and is accordingly being offered for something other than mere propensity, they argue that it is admissible. *Id.* (citing *Boyd v. City & Cty. of San Francisco*, 576 F.3d 938, 947 (9th Cir. 2009) (citing Fed. R. Evid. 404(b) ("Evidence of a crime, wrong, or other act . . . may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."))).

Plaintiffs' motion is **GRANTED** on the 403 ground of trying to prove the level of intoxication. The questions of such an attempt multiply to the point that the DUI case would need to be retried on a scientific ground. It is, however, **DENIED** with respect to the humiliation that Jose experienced. If the testimony of the Plaintiff Jose is offered that he was humiliated and embarrassed due to the arrest, then it opens the door to evidence and the argument that humiliation and embarrassment are minimized by the same prior experience.

### 2. MIL To Exclude Evidence Of Law Enforcement Officers' Unrelated POST Certifications (MIL #2, ECF No. 129)

Plaintiffs seek to limit POST (Peace Officers Standards and Training) records concerning the defendant officers in this case beyond training records relevant to the officers' activities during the casino incident. ECF No. 129. Plaintiffs argue that many of the records concern training irrelevant to actions undertaken on the night in question, such as the use of force and civilian contact, and would be used only to bolster officer credibility, causing undue delay without making pertinent facts more or less probable. Defendants respond that while they do not anticipate spending much time discussing POST records and other certifications, Plaintiffs' failure to identify specific evidence they seek to exclude renders their motion too vague to be granted.

The motion is overly broad. In addition, the training of the officer on relevant matters such as the use of force and civilian contact can be used to establish knowledge and credibility. Accordingly, Plaintiffs' motion is **DENIED**.

4

**3.** **MIL To Exclude Evidence Of Any of Plaintiffs' Alcohol Consumption Outside The Incident At Issue (MIL #3, ECF No. 130)**

Plaintiffs move to exclude testimony and medical records concerning Plaintiffs' alcohol consumption at times other than on the night of the subject incident. ECF No. 130. They argue that Plaintiffs' past alcohol consumption has no bearing on whether the Plaintiffs' arrest for public intoxication[1] was warranted on the night at issue and constitutes improper character evidence under Federal Rule of Evidence 404(a). Defendants respond that evidence of Plaintiffs' alcohol consumption is relevant and that their credibility is at issue. ECF No. 170 at 2. Plaintiffs each admitted to consuming at least three alcoholic beverages while at the casino, and two of the Plaintiffs admit that they may have had at least seven beers that night. *Id*. Despite testimony that they routinely drink between six to eight beers, they also testified that they had never been intoxicated or seen each other intoxicated. *Id*. Defendants argue that the evidence is admissible under Federal Rule of Evidence 608.[2]

Should any Plaintiff testify that they have neither been intoxicated themselves nor seen the others intoxicated, they open the door to impeachment. Otherwise, the motion is **GRANTED** on 403 grounds.

**4.** **MIL To Exclude Evidence Or Testimony By One Or More Plaintiffs That Deputy Sheriff Richard Gonzales Has Been The Recipient Of Madera County Sheriff Deputy Of The Year Award Or Any Other Commendations (MIL #4, ECF No. 131)**

Plaintiffs seek the exclusion of evidence that Defendant Deputy Gonzales received the Madera County Sheriff Deputy of the Year Award and evidence of any other commendations that he or other law enforcement officers involved in the incident have received on the basis that any such evidence is irrelevant to the issues in this case and is unduly prejudicial. ECF No. 131, 174. Defendants do not

---

[1] California Penal Code § 647(f) provides that it is a misdemeanor to be "found in any public place under the influence of intoxicating liquor . . . in a condition that he or she is unable to exercise care for his or her own safety or the safety of others, or by reason of his or her being under the influence of intoxicating liquor, any drug, controlled substance, toluene, or any combination of any intoxicating liquor, drug, or toluene, interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way." Cal. Penal Code § 647(f).

[2] "Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness" of the witness or of another witness about whose character the witness has testified about. Fed. R. Evid. 608(b).

oppose. Had the Plaintiffs met and conferred prior to filing this motion, they would have known there was no opposition, precluding the wasted time of the parties and the Court.

Plaintiffs' motion is **GRANTED**.

### 5. MIL To Exclude Evidence And Questioning Regarding Claims Or Lawsuits Alleging Excessive Force Or False Arrest Of Any Law Enforcement Officer Involved Or The Absence Of Any Such Claims Made Against Them (MIL #5, ECF No. 132)

Plaintiffs move to exclude any "evidence of complaints, claims or lawsuits regarding the use of excessive force by Officer Varner, Sgt. [Guy] Rich and Deputy Gonzales" on the basis that Defendants objected to discovery requests for this information and did not produce responsive documents. ECF No. 132 at 3. Defendants do not oppose this motion. ECF No. 175.

Plaintiffs' motion is **GRANTED**. That said, since it is not opposed, the Court again wonders why there was no meet and confer that would have precluded the wasted time to bring the motion or have it read by the Court.

### 6. MIL Concerning The Admissibility Of Testimony Of Dr. Deniz Baysal Given In His Deposition Regarding Future Hip Surgery And The Cost Thereof (MIL #6, ECF No. 133)

Plaintiffs move for an order permitting their designated medical expert Dr. Deniz Baysal to opine at trial that Avila may need hip surgery in the future and offer opinions about the potential cost associated with that procedure. ECF No. 133. Plaintiffs in August, 2017, moved for an order to supplement Dr. Baysal's expert report to add opinions concerning the costs of and need for future care. ECF No. 91. Following briefing and a hearing, that motion was denied by the Judge then handling the case. ECF No. 98. Plaintiffs again move for an order permitting Dr. Baysal to supplement his report with testimony about future care that Avila may need but now seek to limit the scope of that supplemental opinion only to testimony about future hip care. ECF No. 133 at 4. Whereas Plaintiffs had sought to supplement Dr. Baysal's report to include testimony about all future care, including treatment for Avila's knee and ankle, Plaintiffs limit their request here to treatment of Avila's hip, on the

basis that Dr. Baysal testified on this topic at his deposition.[3]  They argue that there is no prejudice or surprise because Defendants have a medical expert who has not been deposed who can offer his own testimony on the matter; that Defendants could have cured the prejudice if they had accepted Plaintiffs' offer to depose Dr. Baysal a second time; that there is minimal likelihood of disruption of trial; and that Plaintiffs demonstrated no bad faith.

Defendants oppose on the ground that this issue has already been briefed and resolved.  ECF No. 171.  Plaintiffs sought to supplement Dr. Baysal's opinions five months after the deadline for expert disclosure and three months after he was deposed.  The attempt to supplement his report was briefed and decided, and Plaintiffs did not move for reconsideration.  Instead, they brought this motion seeking to

---

[3] They cite the following exchange:

> Q. Have you been asked to do anything in this case beyond what we have discussed today?
>
> A. No.
>
> Q. Are there any tasks –
>
> Ms. Sample: Well, I don't think that it's an issue in dispute, but I did have him look at the past medical bills.
>
> The Witness: Oh, yeah, I looked—but those were in the file here, too, so.
>
> Ms. Sample: Yeah, I know. And so he concluded what everybody else did, that they're reasonable and necessary. And then he can offer opinions as to the cost of these procedures, although I don't think that they're too different than as [*sic*] in the past. Those are the only other areas.
>
> The Witness: I don't know, like, the only thing I mentioned that would be really expensive would be the hip revision. Because, normally, a primary hip replacement can cost 45 to 60,000, depending on which hospital and the surgeon you go to, or a state even. Revisions can run much more expensive, 80 to $120,000 depending where you go, because the equipment is more extensive, the hospital stay is more extensive. And then that's just the hospital component. They have surgery and anesthesia for that, plus therapy. Yeah because the implant on a primary joint is like $5,000 where the implant on a revision can be $20, $25,000, so just there alone is 20,000 more costs, so.

Deposition of Dr. Deniz Baysal at 49:17-50:19.

re-litigate an issue that has already been resolved.

The Court agrees that this is a motion for reconsideration with neither changed facts or law. Plaintiffs' motion is **DENIED**.

### 7. <u>MIL Concerning Admissibility Of Testimony Of Angela Hill, ADA, Regarding Filing Of Charges Or Running Of Statute Of Limitations (MIL #7, ECF No. 134)</u>

Plaintiffs seek to exclude testimony from Madera County Assistant District Attorney Angela Hill, who was deposed as the person most knowledgeable (PMK) from the Madera County District Attorney's Office. ECF No. 134. She testified at her PMK deposition that she was not employed at the District Attorney's Office at the time of the incident at issue in this case but that the file had been overlooked and was not reviewed to determine whether to file criminal charges against the three Plaintiffs who were arrested in the course of the casino incident. She testified that the statute of limitations had run but that if she had reviewed the file, she would have recommended that charges be filed. *Id*. at 2. Plaintiffs object that this testimony is speculative and contrary to the statement of the District Attorney, who appeared in Superior Court after the arrests and informed Plaintiffs' criminal defense counsel that no charges would be filed. *Id*. Plaintiffs' criminal counsel is prepared to testify about that conversation. *Id*. at 2-3.

Defendants oppose the motion. They aver that they are "amenable to the exclusion of evidence regarding the reason why criminal charges were not filed against" the Plaintiffs in connection with the casino incident but believe that the exclusion must apply to both sides. ECF No. 182 at 1. If Plaintiffs are permitted to elicit testimony from their criminal defense attorney concerning the fact that the District Attorney did not file charges against them, then Defendants argue that it would be unduly prejudicial to prevent them from offering testimony from Ms. Hill concerning the same issue. They are concerned that the Plaintiffs may insinuate that no charges were filed because there was no case.

Plaintiffs' motion is **GRANTED**. Whether or not charges were filed is irrelevant and may not be discussed by either side.

### 8. MIL To Exclude Evidence Of Health Insurance Payments (MIL #8, ECF No. 135)

Plaintiffs move to preclude evidence of health insurance payments concerning Plaintiff Avila's medical treatment on the basis that it is barred by the collateral source rule. ECF No. 135. Relying on *Howell v. Hamilton Meats & Provisions, Inc.*, a California Supreme Court decision, Plaintiffs argue that evidence of health insurance payments are barred by the collateral source rule, which states that "if an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor." 52 Cal. 4th 541, 551 (2011) (internal citation and quotation marks omitted). Because Avila may recover amounts that her insurer paid for her medical care, evidence of those payments "have no probative value" and carry the risk of confusion and prejudice. ECF No. 135 at 2-3.

Defendants argue that while the collateral source rule prohibits the reduction of a plaintiff's compensation based on evidence of third-party payments to a medical provider, it does not prohibit that evidence when offered to prove another contested issue in the case. ECF No. 183. Defendants claim that the determination of the value of the medical services provided to Avila is contested in this case, and evidence of amounts paid to the medical providers is relevant because it "serves as better evidence of the value of treatment than the amount on the medical bill." *Id*. at 1. The information is further relevant, they argue, because California law limits damages for medical expenses to the amount that a private insurer actually paid, not the undiscounted charge listed on a bill that was never paid by or on behalf of the plaintiff. *Id*. (citing *Howell*, 52 Cal. 4th at 566 ("[A]n injured plaintiff whose medical expenses are paid through private insurance may recover as economic damages no more than the amounts paid by the plaintiff or his or her insurer for the medical services received or still owing at the time of trial.")).

Plaintiffs' motion is **GRANTED** with the following clarification. The actual damages for medical bills is the amount the medical professional agrees to accept in full payment for the medical services. Those will be allowed to be presented, but not how the amounts were determined. There will

be no mention of health insurance by either side, nor any mention of amounts charged if those amounts are different from the amounts actually paid to satisfy the medical billing in its entirety.

### 9. MIL To Exclude Evidence Of Motor Vehicle Accident After The Incident (MIL #9, ECF No. 136)

Plaintiffs seek to preclude Defendants from introducing evidence concerning a car accident that took place in December of 2014, approximately 18 months after the June, 2013, incident at issue in this case. Plaintiffs describe the car crash as "a minor rear end motor vehicle collision" that "caused no personal injuries" and after which Avila sought no medical treatment "because it was unnecessary." ECF No. 136 at 2. Plaintiffs contend that evidence relating to the car accident is irrelevant to the injuries caused a year and a half earlier at the casino, speculative, and in the absence of evidence that Avila's injuries were aggravated by the car accident, unduly prejudicial.

Defendants respond that evidence relating to the car accident is relevant. ECF No. 172. They argue that the nature and extent of Avila's injuries and damages are disputed issues in this case, and they are entitled to explore alternate causes of Avila's "limitations and complaints." They read Avila's medical records to show that she "was progressively healing from her hip injury at the time of the motor vehicle accident," but that after the accident, she experienced worsening symptoms and new complaints that arose only after the accident. *Id*. at 2. In addition to relying on testimony from one of Avila's treating physicians about whether the hip injury would have caused certain other physical problems, Defendants intend to call an expert in orthopedics to testify that several of Avila's complaints and injuries are unrelated to the casino incident. *Id*.

The Court agrees that Defendants are entitled to explore whether other incidents affected the nature and extent of Avila's injuries. THIS IS HOWEVER TRUE ONLY IF PLAINTIFF IS SEEKING PAIN, SUFFERING AND/OR TREATMENT AFTER THE DATE OF THE MOTOR VEHICLE ACCIDENT. There appears to be a factual dispute of whether or not Avila was or was not injured in the motor vehicle accident, including whether or not she complained of injuries from it. The evidence is

relevant and is not substantially outweighed by the risk of unfair prejudice or confusing the issues. Accordingly, Plaintiffs' motion is **DENIED**.

### 10. MIL To Exclude Evidence Of Melinda Avila's Use Of Cigarettes (MIL #10, ECF No. 137)

Plaintiffs seek to exclude evidence of Avila's cigarette use. ECF No. 137. They argue that Defendants have provided no evidence that Avila's smoking is relevant to any issue in this case. In particular, they argue that Defendants' expert witness Dr. Cahill did not address it in his report and that neither he nor any of the treating physicians addressed the matter in their depositions. *Id*. at 3. Defendants respond that Avila's "overall health and ability to perform her prior job is a key disputed issue in this case." ECF No. 184 at 1. The calculation of damages in this case will depend to a large degree on how long Avila would have continued at her job if she had not been injured, and they argue that because "tobacco use can inhibit a person's ability to perform physically laborious tasks, such as the work Ms. Avila performed at her job prior to this incident," the fact of her smoking is relevant to determining damages related to the expected duration of her work at the Color Spot Nursery. *Id*. Defendants do not identify any expert or lay witness who will testify about the issue.

Defendants will not be permitted to introduce expert testimony that had not previously been disclosed during discovery. Without expert evidence to show a cause-effect relationship, the jury would be left to speculate based on argument alone. Accordingly, Plaintiffs' motion is **GRANTED**.

### 11. MIL To Exclude Evidence Of Medical Conditions And Treatment Not Relevant To The Issues At Hand, i.e. Hemorrhoids, Hysterectomy, COPD, Etc. (MIL #11, ECF No. 138)

Plaintiffs move to exclude all evidence, questioning, testimony, and argument related to Avila's medical treatment that concern anything other than the "medical conditions that Plaintiffs are requesting damages for and are at issue in this case." ECF No. 138. They request that they be permitted to redact references to conditions not at issue in this case from Avila's medical records. Defendants do not oppose. ECF No. 176.

Accordingly, Plaintiffs' motion is **GRANTED**. Again, the Court wonders why this motion was made at all in light of the absence of opposition.

### 12. MIL To Exclude Questioning About Sexual Orientation Of Melinda Avila Or Gretel Lorenzo (MIL #12, ECF No. 139)

Plaintiffs move to exclude questioning, testimony, or argument relating to the sexual orientation of Plaintiffs Avila and Gretel on the basis that it is irrelevant and potentially prejudicial. ECF No. 139. Defendants do not oppose but request that if Plaintiffs object to Defendants' referring to Avila and Gretel as "wives" and "family," they seek clarification as to the proper way to refer to Plaintiffs. ECF No. 177.

Plaintiffs' motion is **GRANTED**. The parties are ordered to confer about the manner in which they will refer to Plaintiffs. The term "friends" seems appropriate. While Defendants indicated that they are not going to pursue any questions concerning the sexual orientation issue, does any party intend to bring out the fact that Avila and Gretel are married for _any_ purpose in the case? If so, the parties should inform the Court within three days of electronic service of this Order, providing specific details of what they anticipate presenting and the reasons. Otherwise no mention is expected of the sexual orientation or the marriage.

### 13. MIL To Exclude Evidence That Jose Or Melinda Said They Were Going To Sue Or Insinuated That They Would Sue Or Said "You Are Going To Pay For This" (MIL #13, ECF No. 140)

Plaintiffs move to exclude evidence that Jose, Avila, or both stated after they were arrested on the night of the casino incident that they intended to sue and that the Defendants would "pay" for their actions. ECF No. 140. Plaintiffs argue that any testimony about these purported statements are inadmissible under both Federal Rule of Evidence 403 and under Rule 404 because it would be advanced for the purpose of showing character evidence to demonstrate that they are "intemperate or ill-tempered by nature" and invite the jury to blame them for the altercation. _Id._ at 3. Defendants argue that testimony about whether Plaintiffs claimed that they would make Defendants "pay" is relevant to

Plaintiffs' credibility and motive and is therefore permissible under Rule 404(b)(2).  ECF No. 173 at 2 (quoting Fed. R. Evid. 404(b)(2) (character evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.")).

The motion is **GRANTED**.  It is a 403 issue and to waste time explaining that it was intended to mean that the Plaintiffs thought that Defendants were wrong that evening, or said it in anger, is not worth the time needed to be expended.

### 14.   MIL To Exclude Evidence Of The Pelvic Ultrasound By Dr. Malley (MIL #14, ECF No. 141)

Plaintiffs move to exclude a pelvic ultrasound that a Dr. Malley performed on Plaintiff Avila in 2009, arguing the pelvic ultrasound and any diagnoses related to it are unrelated to the casino incident are therefore irrelevant.  ECF No. 141.  Defendants do not oppose.  ECF No. 178.

Accordingly, Plaintiffs' motion is **GRANTED**.  The Court again wonders why this motion brought.

### 15.   MIL To Exclude Evidence Of Blurred Vision And Cataracts (MIL #15, ECF No. 142)

Plaintiffs move to exclude evidence that Avila experienced blurred vision, consulted with a doctor about it, and was diagnosed with cataracts or pre-cataracts.  ECF No. 142.  They argue that this evidence is irrelevant and should be excluded.  Defendants do not oppose.  ECF No. 179.

Accordingly, Plaintiffs' motion is **GRANTED**.  Again, the bringing of the motion and the need to read it and rule upon it is a wholesale waste of resources and time, obviously due to counsels' not meeting and conferring before filing these motions.

### 16.   MIL To Exclude Evidence Of Low Back Pain Radiating Into Left Leg (MIL #16, ECF No. 143)

Plaintiffs move to exclude evidence concerning Avila's history of back pain, which they argue is unrelated to the hip, knee, and ankle injuries that they claim resulted from the casino incident.  ECF No.

143. They seek its exclusion on Rule 403 grounds.

Defendants respond that evidence of back pain is relevant to the calculation of damages relating to Avila's inability to continue her job at Color Spot Nurseries. ECF No. 185. Plaintiffs tie her inability to continue working to the injuries she sustained during the casino incident, and Avila testified at deposition that she had intended to continue working there until age 75. Defendants intend to contest whether Avila can no longer perform her duties at Color Spot Nurseries because of the incident or because of preexisting circumstances. Avila testified that 80% of her job duties were "physically exertive" and included tasks like "offloading heavy plants off trucks, placing plants on shelves and racks, and sweeping the floors." *Id.* at 1. In May, 2011, she visited an interventional radiologist to address her back pain and sciatica, and medical records from the visit stated that her back pain "started approximately two years ago and may [be] related to her work," noting further that the pain had been increasing and radiating downward over the course of the prior six months. *Id.* at 1-2. During a later visit to a doctor's office in August of 2013, after the June, 2013, casino incident, she reported that she was unable to return to her job and that "prior to her injury, the work was becoming difficult as it was." *Id.* at 2. Plaintiffs' expert witnesses intend to testify that Avila's "employability and earning capacity were significantly compromised by the incident" at the casino, *id.* at 3, and have "calculated the economic loss for past and future earnings and benefits arising from" the injuries that Avila sustained during the casino incident with a retirement age of 70 and with a retirement age of 75, *id.* at 4.

The Court agrees with Defendants that evidence of back pain is relevant to the questions whether and for how long Avila would have continued working if not for the injuries resulting from the casino incident. The risk of unfair prejudice resulting from jury confusion about whether Avila is making a damages claim for her back pain is minimal or nonexistent and can be cured with a clarifying instruction to the jury if necessary.

Accordingly, Plaintiffs' motion is **DENIED**.

### 17.  **MIL To Exclude Evidence Of Hand Complaints Including Tingling And Numbness (MIL #17, ECF No. 144)**

Plaintiffs move to exclude evidence of Avila's medical conditions with her hand, including complaints of tingling and numbness.  ECF No. 144.  Similar to their argument concerning evidence of back pain, Plaintiffs argue that the unrelated history of hand pain is irrelevant to the casino incident, outside the "universe of damages that she is seeking for her hip, knee and ankle," and therefore is irrelevant and potentially prejudicial.  *Id*. at 3.

Defendants oppose for the same reasons that they opposed the motion to exclude evidence of Avila's low back pain.  ECF No. 186.  Avila first complained of hand tingling and numbness at medical appointments in July, 2010, and May, 2011, evidence that Defendants say is relevant to the determination whether Avila's inability to work is a result of the casino incident or other preexisting medical conditions.  *Id*. at 4-5.  Defendants also argue, as they did concerning evidence of back pain, that the evidence also goes to whether Avila would have been able to continue working until age 75 or whether other medical conditions would have prevented her from working that long in the absence of the casino incident.  *Id*. at 5-6.  Finally, Defendants argue that some of Avila's physicians attributed the hand tingling and numbness to an underlying neurological problem, which Defendants contend undercuts Avila's statements in interrogatory responses and at deposition that the casino incident was related to the "brain hemorrhage/blood clot in [her] head."  *Id*. at 3, 4.

Evidence of hand tingling and numbness is relevant to the determination of damages, as it is probative evidence of whether Avila would have continued working and for how long if the casino incident had not taken place.

Accordingly, Plaintiffs' motion is **DENIED**.

### B.  **Defendants State Of California And California Highway Patrol Officer Paul Varner's Motions *In Limine***

State Defendants filed ten motions *in limine*.

### 1.  **MIL Re: Dr. Deniz Baysal (ECF No. 110)**

State Defendants move to preclude three categories of testimony from Plaintiffs' medical expert Dr. Deniz Baysal: (1) the costs of future medical care; (2) Avila's inability to work in any capacity; and (3) opinions and information not contained in his January 30, 2017, expert report.  ECF No. 110.

In accordance with the Court's ruling on Plaintiffs' motion to permit Dr. Baysal to opine on the costs of future medical care related to Avila's hip, Defendants' motion is **GRANTED** as to the costs of future medical care and opinions and information not contained in Dr. Baysal's expert report.  Plaintiffs agree that Dr. Baysal will not testify as a treating physician.  ECF No. 188 at 7.

Plaintiffs argue that Dr. Baysal should be permitted to testify at trial about Avila's ability to work.  Dr. Baysal's expert report included an opinion on this topic, stating that "[s]he will not have the stamina and strength she had previously to stand for long periods of time and will need a more sedentary type of job."  ECF No. 188 at 7 (quoting Baysal report).  At his deposition, Dr. Baysal testified that her life will be "sedentary, obviously. She has pain when she sits and then rises from sitting. So could she find a job where she's sedentary sitting all day?  I guess she could, yes.  But then, once again, you have to calculate breaks in there where she may have to get up every hour and stretch out the hip or exercise it.  So I'm not sure if she's able to retrain and go to some desk job."  *Id*. at 6-7 (quoting Baysal dep. at 35:10-19).

Dr. Baysal's report and deposition testimony addressed Avila's ability to work.  Defendants' motion seeking to limit the substance of that testimony is the proper subject of cross-examination, not a motion *in limine*.  Accordingly, Defendants' motion with respect to opinions about Avila's inability to work is **DENIED**.

### 2.     MIL Re: Mahla (ECF No. 111)

State Defendants move to exclude any testimony by Plaintiffs' economist Charles Mahla on (1) Avila's inability to work in any capacity and (2) opinions and information not contained in his March 17, 2017, report.  ECF No. 111.  They argue that because there is no medical evidence to support the idea that Avila cannot work in any capacity, Dr. Mahla should not be permitted to testify about what her

damages for future lost wages would be.

Plaintiffs oppose the motion.  ECF No. 189.  They argue that Defendants mischaracterize Dr. Baysal's testimony and that the extent of Avila's injuries, including whether she will be able to return to work, is a factual matter in dispute that the jury may decide.  The Court agrees.

Accordingly, Defendants' motion is **GRANTED** with respect to opinions and information not contained in Dr. Mahla's expert report dated March 17, 2017, and otherwise **DENIED**.

### 3.    <u>MIL Re: Sarkisian (ECF No. 112)</u>

State Defendants seek to limit the testimony of Plaintiffs' vocational rehabilitation expert Dr. Rick Sarkisian.  ECF No. 112.  At his deposition, Dr. Sarkisian testified that he had spoken to Dr. Deniz Baysal, Plaintiffs' medical expert, about Avila's ability to return to work.  During Dr. Sarkisian's evaluation of Avila, she had stated that she "did not feel capable of working in any job full time," and Dr. Sarkisian contacted Dr. Baysal to see if he had an opinion on the matter.  *Id*. at Defs.' Ex. 2, May 2, 2017, Sarkisian Dep. at 27:21-25.  Dr. Sarkisian testified that Dr. Baysal's opinion was that "employment in any capacity was not a reasonable medical probability."  *Id*. at Ex. 2, May 2, 2017, Sarkisian Dep. at 28:6-10.  Dr. Sarkisian did not supplement his expert report but did provide a memorandum summarizing the phone call prior to the deposition.  Defendants seek to preclude testimony from Dr. Sarkisian (1) concerning Avila's inability to work in any capacity, on the ground that the testimony is unfounded and speculative and (2) on opinions and information not contained in his March 6, 2017, expert report.

Plaintiffs respond that Dr. Sarkisian accurately summarized Dr. Baysal's testimony.  ECF No. 190.  Dr. Baysal testified that given Avila's limitations, "I guess she could" find a "job where she's sedentary[,] sitting all day," but that "I'm not so sure if she's able to retrain and go to some desk job." ECF No. 110 at Defs.' Ex. 3, May 24, 2017, Baysal Dep. at 34:12-19.  He went on to testify that he told Dr. Sarkisian, "I said she cannot carry pallets and that she will most likely require a sedentary job, but the problem is she may not be able to retrain[,] I told him.  So placing her in a job will be very difficult,

in a sedentary job that will not cause pain to her hip. . . . [E]ven a sedentary job where she answers the phone could cause issues, so I told him that. So she may not be – if that's the case, she may not even be employable. I'm not sure what her background or schooling is." *Id*. at Defs.' Ex. 3, May 24, 2017, Baysal Dep. at 53:13-25. Dr. Sarkisian's opinions regarding Avila's ability to return to work, Plaintiffs argue, is based on Dr. Baysal's medical opinion and is therefore not speculative. ECF No. 190 at 2. In addition, Dr. Sarkisian's report includes the conclusion that Avila "is a non-candidate for employment in the open, competitive labor market and would this have zero earning capacity." ECF No. 110 at Defs.' Ex. 1, March 7, 2017 Mahla Report at 8. Plaintiffs do not oppose the portion Defendants' motion precluding testimony concerning opinions not included in his March 6, 2017, expert report. *Id*.

The extent of Avila's injuries and whether she is able to return to the workforce are factual matters in dispute for the jury to decide.

Accordingly, Defendants' motion is **GRANTED** with respect to opinions and information not contained in Dr. Sarkisian's unsupplemented expert report dated March 6, 2017, and otherwise **DENIED**. Counsel can certainly determine which evidence is in which category, and should NOT anticipate side bar discussions in this regard during trial.

**4.     MIL Re: Discovery (ECF No. 113)**

State Defendants seek to exclude any evidence not disclosed before the close of discovery, specifically identifying Exhibit 27 (bills from Sierra Pacific Orthopedic Medical Group), Exhibit 38 (medical records from Sierra Pacific Orthopedic Medical Group), and Exhibit 38 (membership agreement and receipts from GB3 gym). ECF No. 113. They further argue that they anticipate that Plaintiffs will attempt to introduce evidence about the costs of future medical care—a topic absent from Plaintiffs' Rule 26 disclosure—that should be precluded. *Id*. at 3.

**a.     Exhibit 36**

Plaintiffs oppose the exclusion of bills from Sierra Pacific Orthopedic Medical group, arguing that Defendants were made aware of Avila's referral to Sierra Pacific at Avila's deposition on March 22,

2017; that Avila did not visit the clinic until May, 2017, after the close of discovery; and that they provided the bills "as soon as they were able to gather them," in August, 2017. ECF No. 191 at 2. They contend that the statements at Avila's deposition put Defendants on notice of the future upcoming care.

A party who is required to continue to be treated medically is not precluded from continuing to provide the billing deemed reasonable and necessary. Accordingly, the motion is **DENIED**.

### b. Exhibit 37

Plaintiffs agree that they will not seek to introduce the medical records in Exhibit 37 or refer to them during questioning "without the Court's further permission." *Id*. at 3. Accordingly, the motion is **GRANTED** with respect to Exhibit 37. Why was this motion needed?

### c. Exhibit 38

With respect to Exhibit 38, Plaintiffs respond that the GB3 membership agreement and "some GB3 bills were produced during discovery." *Id*. They agree to admit only the membership agreement and bills produced during discovery. Accordingly, the motion is **GRANTED IN PART** with respect to Exhibit 38. Plaintiffs will be permitted only to introduce those records that were exchanged during discovery. With a meet and confer, this wasted time could have been prevented.

### d. Witnesses

State Defendants additionally seek to exclude any witnesses not listed on Plaintiffs' Rule 26 disclosure and object in particular to the calling of James Garcia and David Harris, who were not disclosed during discovery. ECF No. 113 at 4. Plaintiffs agree to withdraw these witnesses. ECF No. 191 at 3. The motion is accordingly **GRANTED** with respect to the exclusion of witnesses not disclosed. Again, a lack of consideration by counsel for the Court's resources caused this motion to be filed.

### 5. MIL Re: Van Blaricom (ECF No. 114)

State Defendants move to exclude Plaintiffs' police practices expert, Mr. D.P. Van Blaricom, from testifying on (1) standards of the International Association of Chiefs of Police; (2) standards of

National Law Enforcement Policy Center Model Polices; (3) California Highway Patrol policies; and (4) California state law regarding false arrest and false imprisonment. ECF No. 114. They seek to preclude his testimony on those topics because Mr. Van Blaricom did not review any CHP policies, did not review any California law, and admitted that the International Association of Chiefs of Police standards and National Law Enforcement Policy Center Model Police standards have not been adopted by any law enforcement agency or polity and thus are irrelevant material that would serve only to confuse the jury. *Id*. at 3-4.

Plaintiffs respond that Mr. Van Blaricom need not be familiar with CHP policies or California law to opine on whether there existed probable cause to arrest the plaintiffs or authority to detain them. The state law claims for false arrest/imprisonment and the Bane Act claims will rise or fall depending on whether the Defendant officers had probable cause, which is a standard supplied, at a minimum, by the Fourth Amendment of the U.S. Constitution. ECF No. 192 at 3-4. Plaintiffs argue that Mr. Van Blaricom's report included his opinions concerning the absence of probable cause, and because it was properly disclosed, there is no ground for excluding those opinions.

For the designated expert to opine on probable cause and how it related to the Fourth Amendment, he at least would need a law degree. The Court has not been provided with any foundation for the witness to testify to that issue. Based on information the Court has, this motion is **GRANTED**. Mr. Van Blaricom may properly testify about what he or a reasonable officer would have done and why, or what best practices call for, based on his review of video, reports, statements, and best practices available. Legal conclusions, however, are not the proper subject of his opinion testimony, and he will not be permitted to testify about whether Defendants' actions were lawful or constitutional.

**6.** **MIL Re: Settlements (ECF No. 115)**

State Defendants move pursuant to Federal Rules of Evidence 408 and 403 to exclude any testimony or evidence relating to settlement negotiations, ECF No. 115, and Plaintiffs do not oppose, ECF No. 193.

Accordingly, Defendants' motion is **GRANTED**.  This is another example of dealing with a motion that is a waste of Court time, since it need not have been brought had counsel done their due diligence.

### 7.    MIL Re: Video (ECF No. 116)

State Defendants move to exclude any video footage depicting the incident after the Plaintiffs were handcuffed.  ECF No. 116.  They argue that footage depicting events after the handcuffing is irrelevant, because the "excessive force claim is based on handcuffing," not events taking place afterwards.  *Id*. at 3.  Footage depicting Officer Varner "keeping Gretel Lorenzo i[n] a seated position" may confuse the jury, they contend, "by this show of contact and the actual claims at issue."  *Id.* Plaintiffs oppose, arguing that the entire video is evidence relevant to whether Alfredo was intoxicated, relevant to the officers' state of mind, and relevant to whether the conduct was malicious and oppressive.  ECF No. 194.  The opposition also incorporates arguments concerning the video evidence made in the Plaintiffs' trial brief, where they additionally argue that "Plaintiffs are entitled to recover damages for physical inconvenience, mental suffering and humiliation of mind incident to a false arrest."[4]  ECF No. 160 at 10.

Defendants have not demonstrated that post-handcuffing video evidence would be confusing to the jury or unduly prejudicial.  The video evidence is relevant to the issue of alleged false arrest and possible damages that naturally flow therefrom.

Accordingly, Defendants' motion is **DENIED**.

### 8.    MIL Re: Melinda Avila's Lack Of Health Insurance (ECF No. 117)

State Defendants move to exclude evidence concerning Avila's insurance status and financial condition, including any testimony that she lost her medical insurance following the casino incident,

---

[4] It also argues for the presentation of the full video based on the rule of completeness.  *Id.* at 11.  The rule provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time."  Fed. R. Evid. 106.

arguing that such evidence is irrelevant and unduly prejudicial to the defendants.  ECF No. 117.

Plaintiffs oppose the motion, arguing that health insurance was one of a bundle of benefits that Avila

lost when she lost her job and was among the financial losses calculated by Plaintiffs' expert economist.

ECF No. 195 at 2-3.  They argue that following the loss of her job, Avila was insured through her

spouse's coverage.  Those insurers imposed a lien on the recovery of damages in this suit, which is the

amount that Avila seeks to recover.  Plaintiffs additionally argue that the collateral source rule bars

discussion of how Avila was insured after she lost her job, and seek to preclude testimony that she

switched orthopedic providers due to a change in insurance.  *Id.*

If the Plaintiffs open the door claiming there is a loss of insurance benefits as a result of the loss

of employment, the defense may present evidence that the loss was insignificant because she was then

insured by her spouse's medical insurance policy, and therefore the benefit was not lost.  The decision is

one of strategy and not preclusion.  The motion is **DENIED**.

### 9.    MIL Re: Net Worth (ECF No. 118)

State Defendants move to exclude evidence of Officer Varner's net worth until Plaintiffs have

proven a *prima facie* case of liability for punitive damages.  ECF No. 118.  Plaintiffs do not oppose.

ECF No. 196.

Accordingly, Defendants' motion is **GRANTED**.  This should have been a stipulation had both

counsel met and conferred as ordered.

### 10.    MIL Re:  California Penal Code § 841 (ECF No. 119)

State Defendants move to exclude any reference to California Penal Code § 841.  ECF No. 119.

That provision provides in relevant part:

> The person making the arrest must inform the person to be arrested of the intention to
> arrest him, of the cause of the arrest, and the authority to make it, except when the person
> making the arrest has reasonable cause to believe that the person to be arrested is actually
> engaged in the commission of or an attempt to commit an offense, or the person to be
> arrested is pursued immediately after its commission, or after an escape.

Cal. Penal Code § 841.  Defendants argue that Section 841 is nowhere mentioned in the Third Amended

Complaint, which would have put them on notice that this would be a basis for potential liability, and further argue that Section 841 does not create a private right of action, and is irrelevant and prejudicial. ECF No. 119 at 2-3. In addition, they argue that Plaintiffs' police practices expert Mr. Van Blaricom should not be permitted to testify about it, because he admitted that he reviewed no California law and therefore cannot testify about this provision of the California Penal Code. *Id.*

Plaintiffs oppose, arguing that Section 841 is relevant to multiple issues. ECF No. 197. First, they argue that Section 841 is relevant to Defendants' claim that Alfredo was resisting the arrest of Jose and resisting his own arrest. The officers testified that they did not inform Alfredo or Jose that they were under arrest, information that Plaintiffs contend "will assist the jury in determining if Alfredo was resisting the arrest of Jose," as the officers contend, or whether the officers "were just mad." *Id.* at 3. They claim that the officers' failure to announce that they were law enforcement is also relevant to Plaintiffs' contention that they "were not initially aware that the officers were law enforcement" and were under the mistaken belief that they were private security guards. *Id.* at 4. Next, they argue that the failure to abide by Section 841 is relevant to proving Plaintiffs' Bane Act claim, which applies to violations of the laws of California. Finally, they argue that Section 841 is relevant to proving their false arrest claim.

As for Defendants' argument that reference to Section 841 should be excluded because of its absence from the Third Amended Complaint, Plaintiffs argue that Defendants were on notice, as there was "extensive discovery on the issue of PC §841 throughout the course of this case, including during officer, person most knowledgeable and expert depositions," and the California Commission on Peace Officer Standards and Training itself provides that officers must comply with Section 841. *Id.* at 4-5.

Basic notice is basic due process. Notice is required to be given in a Complaint or an Amended Complaint. This was not done. If the Plaintiffs are taking the position that unless a person is told in words (rather than just actions) that they are under arrest, that they aren't under arrest, they must advise the Court in writing within 3 court days of the receipt of this Order of that position. If that occurs, the

Court will clarify this portion of the ruling.

## C. Defendants County Of Madera And Richard Gonzales's Motions *In Limine*

County Defendants filed six motion *in limine*.

### 1. MIL To Exclude All Medical Records And Testimony From Dr. Patrick Mullen (MIL #1, ECF No. 121)

County Defendants move to exclude all medical records and testimony from Dr. Patrick Mullen at trial. ECF No. 121. Defendants subpoenaed Dr. Mullen in April, 2017, and withdrew the subpoena after Plaintiffs represented that they would not rely on Dr. Mullen at trial. *Id*. at 2. Defendants object that Plaintiffs now seek to introduce medical records from Dr. Mullen at trial after they relied on representations from Plaintiffs' counsel, to their detriment, in forgoing a deposition of Dr. Mullen.

Plaintiffs do not oppose, with the proviso that other witnesses should be permitted to discuss relevant evidence concerning Dr. Mullen's treatment of Avila. ECF No. 198 at 2.

The motion is **GRANTED**. In that there is no dispute about Plaintiffs' counsel's representation that Dr. Mullen would not be relied upon at trial, to now to attempt to do exactly that through others (in other words, indirectly) is precluded.

### 2. MIL To Exclude Statements Of The Law As Exhibits (MIL #2, ECF No. 122)

County Defendants seek to exclude statements of the law as trial exhibits. ECF No. 122. In particular, they object to Trial Exhibits 82-84, which are certain excerpts from the California Penal Code. *Id*. at 3. The "proper method for introducing statements of the law to the jury," they argue, is in the form of jury instructions, not trial exhibits, and introduction of these exhibits would be unduly prejudicial. *Id*.

Plaintiffs oppose. ECF No. 199. Exhibits 82 and 83 contain the text of Penal Code Sections 647(f) and 148(a)(1), respectively, two provisions for which Plaintiffs were arrested. *Id*. at 2. Exhibit

84 contains the text of Penal Code Section 841,[5] which governs formalities in making arrests and which Plaintiffs contend the arresting officers failed to observe during the casino incident. The exhibits would not be received into evidence but instead used as demonstratives during direct examination and cross-examination. These exhibits, Plaintiffs contend, will aid the jury by putting in visual form the important Penal Code provisions at issue in the case.

Defendants' motion is **GRANTED**. This is an issue for jury instructions, not court exhibits.

### 3. MIL To Exclude Evidence Not Disclosed By Plaintiffs To Defendants (MIL #3, ECF No. 123)

County Defendants move to exclude evidence Plaintiffs failed to disclose during discovery, including 10 specific pieces of evidence. ECF No. 123 at 2. These items are considered in turn.

#### 1. Rick Sarkisian's May 1, 2017 "Ph.D. Report"; Rick Sarkisian's May 8, 2017 Supplemental Report; Charles Mahla's June 23, 2017 Supplemental Report

Plaintiffs do not oppose exclusion of this evidence. ECF No. 201 at 2. Accordingly, Defendants' motion with respect to this evidence is **GRANTED**. This motion should not have been made.

#### 2. Any Testimony By Deniz Baysal As A Treating Physician

Plaintiffs do not oppose exclusion of testimony by Dr. Deniz Baysal as a treating physician. ECF No. 201 at 2. Accordingly, Defendants' motion with respect to this evidence is **GRANTED**. This motion was another waste of time.

#### 3. Any Testimony Of Deniz Baysal Or Any Other Expert On Plaintiff Melinda Avila's Future Medical Expenses

Plaintiffs oppose this motion in part. ECF No. 200 at 2. For the reasons outlined in the Court's ruling on Plaintiffs' MIL #6, ECF No. 133, Defendants' motion with respect to this evidence is **GRANTED**.

---

[5] This provision is the subject of a motion *in limine* by CHP and Officer Varner. ECF No. 119.

### 4. **Deniz Baysal's June 9, 2017 "Future Cost Preliminary Report"**

Plaintiffs do not oppose exclusion of this evidence. ECF No. 201 at 5. Accordingly, Defendants' motion with respect to this evidence is **GRANTED**. This was more wasted time.

### 5. **Plaintiffs' Witnesses James Garcia And David Harris**

Plaintiffs do not oppose exclusion of testimony from these witnesses. ECF No. 201 at 6. Accordingly, Defendants' motion with respect to this evidence is **GRANTED**. This was more wasted time.

### 6. **Plaintiff Melinda Avila's Medical Records From Sierra Pacific Orthopedics**

Plaintiffs concede that medical records from Sierra Orthopedics were not produced prior to their disclosure as a trial exhibit and do not oppose the exclusion of this evidence. ECF No. 201 at 6. Accordingly, Defendants' motion with respect to this evidence is **GRANTED**. This was more wasted time.

### 7. **Plaintiff Melinda Avila's Membership Agreement And Billing Documents From George Brown Sports Club**

Plaintiffs oppose exclusion of this testimony in part. They argue that the GB3 membership agreement and some GB3 bills were produced during discovery. ECF No. 201 at 6-7. They agree to admit only the membership agreement and bills produced during discovery. Accordingly, the motion is **GRANTED IN PART**. Plaintiffs will be permitted only to introduce those records that were exchanged during discovery.

### 8. **Video Of Another Individual Performing Plaintiff Melinda Avila's Job At Color Spot Nurseries**

County Defendants argue that Plaintiffs' Exhibit 49, a video of another individual performing Avila's duties at Color Spot, was disclosed after the close of evidence and should be excluded on that basis, given that Plaintiffs have established no substantial justification and "Defendants no longer have the ability review the previously undisclosed information and conduct discovery in response." ECF No. 123 at 6. Plaintiffs respond that whether Avila is able to return to work is a fact in dispute and that the

"video evidence is a demonstrative aid which will help the jury to understand what Melinda's job duties were and the degree of physical requirements necessary to complete her job." ECF No. 200 at 7. They contend that they produced it to Defendants "as soon as they received it" in early May, which was only approximately three weeks after the close of discovery and more than seven months prior to the scheduled trial date. *Id*.

The motion is **GRANTED**. The issue is not one of relevance. The issue is untimely production absent good cause.

### 4. MIL To Exclude Testimony Of D.P. Van Blaricom Re Non-Governing Standards Of Police Officer Conduct (MIL #4, ECF No. 124)

County Defendants move to preclude Plaintiffs' police practices expert Mr. D.P. Van Blaricom from referencing "non-governing standards of police officer conduct," including standards from the International Association of Chiefs of Police ("IACP"), the President's Task Force on 21st Century Policing, the National Consensus Policy on Use of Force, and the Police Executive Research Forum. ECF No. 124 at 2. They also seek to preclude use of Plaintiffs' Exhibit 67, model rules and policies from the IACP. *Id*. Mr. Van Blaricom's expert report contains references to these organizations, which Defendants contend have not been adopted by any law enforcement agency involved with this case and are not governing law in California. Therefore, they argue that the standards are irrelevant and potentially confusing to the jury.

Plaintiffs oppose. ECF No. 201. They argue that because false arrest/imprisonment claims and § 1983 claims for false arrest rest on whether officers had probable cause under the Fourth Amendment of the U.S. Constitution, and because the consensus standards referenced in Mr. Van Blaricom's report "communicat[e] to law enforcement personnel what the constitutional standards require," they are relevant to determining the facts at issue in this case. *Id*. at 3-4. They argue that Mr. Van Blaricom is also clear that the consensus reports are not controlling standards and that IACP and other consensus reports are often referenced by courts.

Plaintiffs have not provided background, foundation, qualifications, or relevance for this expert to so testify. The motion is **GRANTED**. Mr. Van Blaricom may properly testify about what he believes a reasonable officer would have done and why, or what best practices call for, based on his review of video, reports, statements, and best practices available. Legal conclusions, however, are not the proper subject of his opinion testimony, and he will not be permitted to testify about whether Defendants' actions were lawful or constitutional.

### 5. MIL To Exclude Testimony Regarding Identity Of Individual That Groped Plaintiff Gretel Lorenzo (MIL #5, ECF No. 126)

County Defendants move to exclude reference of any kind relating to the identity of the individual that allegedly groped Gretel on the buttocks at the bar on the night of the incident. ECF No. 126. Plaintiffs do not oppose the motion and agree that they will not make any reference to statements about the identity of the individual. Defendants' motion is **GRANTED**.

### 6. MIL To Exclude Testimony Regarding Memorandum Of Understanding Between Chukchansi Gold Resort & Casino And County Of Madera (MIL #6, ECF No. 127)

County Defendants move to preclude reference to the Memorandum of Understanding ("MOU") between the Chukchansi Gold Resort & Casino and Madera County, dated February 14, 2007, and any subsequent amendments to it. ECF No. 127. The MOU provides that the Casino pays Madera County for the "cost of 5 deputy sheriffs plus a 12% add-on to provide a 20 minute response time 7 days per week and 24 hours per day." *Id.* at 2 (quoting expert report of Plaintiffs' police practices expert Mr. Van Blaricom). Defendants seek to preclude the MOU on the ground that the document is irrelevant. The MOU itself provides no guidelines for how arrests are to be made at the Casino. Most importantly, the standard for determining whether Defendants had probable cause to arrest Plaintiffs and whether Defendants used proper force is an objective one. *Id.* at 4. Defendants also urge the MOU's exclusion on 403 grounds, arguing that whatever minimal probative value it brings is outweighed by the risk of confusion.

Plaintiffs oppose. ECF No. 203. They argue that the MOU (Plaintiffs' Exhibit 5) is relevant for

the simple reason that it explains the presence of Madera County Sheriff Deputies on tribal land. Beyond that, they argue that Officers felt compelled to investigate the incident because of the existence of the MOU and that only the MOU explains why two Sheriff Deputies and two CHP officers showed up after a minor verbal altercation at a time when the Plaintiffs "were peacefully minding their own business and merely . . . waiting for the right that the officers knew was coming for them." *Id*. at 2-3. In their view, the officers were acting "not as peace officers but instead as agents" of the Casino. *Id*. at 2.

The motion is **GRANTED**. The MOU is irrelevant. The Plaintiffs need not explain an issue they alone wish to interject.

## IV. <u>CONCLUSION AND ORDER</u>

The motions have now been decided and counsel and parties are expected to abide by the rulings completely. Failure to so abide will be met with significant sanctions.

The bringing of many of these uncontested motions have shown a disregard for the time and resources of the Court. Counsel are cautioned that should this same attitude be brought to trial, they will neither be ignored nor tolerated.


IT IS SO ORDERED.

Dated:   __February 13, 2018__        _____**/s/ Lawrence J. O'Neill**_____
                                         UNITED STATES CHIEF DISTRICT JUDGE